1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHA YANG, | ) 1:09cv01495 DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Cha Yang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications on September 20, 2006, alleging disability since March 22, 2005, due to depression, headaches, weakness and suicidal thoughts. AR 81-82, 312, 313. After

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 64, 65-69, 71-75, 312, 313.  ALJ Bert C. Hoffman, Jr., held a hearing on March 14, 2008, and issued an order denying benefits on June 20, 2008.  AR 9-22, 317-344.  On June 19, 2009, the Appeals Council denied review.  AR 2-4.

Plaintiff filed a previous application for benefits that was denied by decision dated March 21, 2005.  The Appeals Council denied review on July 27, 2006.  AR 12.

Hearing Testimony

ALJ Hoffman held a hearing in Fresno, California, on March 15, 2008.  Plaintiff attended the hearing with his attorney, Sengthiene Bosavanh.  An interpreter also assisted at the hearing.  AR 317.

Plaintiff testified that he was born in 1946 and was divorced.  He lives with a friend and has a driver's license, though he can't drive any more because of pain in his leg and back.  AR 322-323.  Plaintiff has not attended school.  AR 325.  He last worked as a machine operator but had to stop because he was sick.  AR 326.

Plaintiff explained that he could not perform the position anymore because he has pain in his back and right leg.  AR 328.  He has severe back pain and cannot sit in a chair.  Sitting on the ground against the wall helps for a little while, though he can only sit like that for ten minutes.  AR 328.  Plaintiff thought that he could sit for five minutes at a time and could stand and/or walk for ten minutes.  AR 329.  He could lift a gallon of milk and could carry it for five or ten minutes.  AR 330.  Plaintiff uses a cane all the time but it has not been prescribed.  AR 331.  He did not use it at the hearing, however, as he left it in the car.  AR 331.

Plaintiff testified that he suffers from depression and has nightmares every night or two.  Plaintiff fought in the war when he was 10 and his dreams are usually about relatives or friends that died in the war.  AR 332.  He also gets headaches, which last almost all day before medication helps, once a week.  AR 334.  Plaintiff suffers from stomach pains, as well.  AR 334.

Plaintiff testified that he has problems remembering things every day and that he cannot concentrate or focus because he is sick.  He testified that watching television and listening to the radio make him sick mentally.  AR 335.

Plaintiff further testified that he has friendly neighbors and that he talks to them every time he goes outside.  He also smokes cigarettes with his friends when he goes outside.  AR 337.

Plaintiff takes medication for his depression but sometimes goes without.  AR 338. When he doesn't have his medication, his depression is worse.  AR 339.  During the day, Plaintiff doesn't do much other than sitting and laying down.  AR 339.

Medical Evidence

In October 2003, Plaintiff began receiving treatment from Fresno County Mental Health. AR 252.

On June 16, 2004, Plaintiff was examined by Wen Liang Chu, M.D.  He complained of depression and pain in his back and knee.  On mental status examination, his mood was depressed and he gave conflicting reports of his functioning level.  Dr. Chu diagnosed depression, not otherwise specified, rule out malingering.  AR 266-267.

In May 2005, Plaintiff reported that his only complaint was that he was fighting his SSI denial.  He was alert and in a bright mood and reported that his depression was connected to the fact that he had no income.  Plaintiff wanted to stay with Mental Health until he gets SSI. Plaintiff agreed that he was stable but worried how discharge would affect this SSI.  AR 259.

In August 2005, Plaintiff presented as rested and nicely dressed and groomed.  He and his girlfriend went on a vacation to Eureka for two weeks and he enjoyed fishing and visiting with friends.  Plaintiff reported that his depression had improved and stated that if he had money and good health, he would never be depressed.  He acknowledged that he had met his goal of treatment but requested that his case be left open because of the pending SSI application.  AR 252.

On April 15, 2006, Plaintiff underwent a psychological examination performed by Vang Leng Mouanoutoua, Ph.D.  Plaintiff reported that he lived with his girlfriend and her children. He explained that he was drafted into the Laotian army and fought in the Secret War funded by the American Central Intelligence Agency for 15 years.  He was wounded during his service and lost many friends and relatives.  When the communists took control of Laos, he joined the anticommunist forces in the jungle.  In 1988, Plaintiff and his family escaped to Thailand and

two years later, came to the United States.  Plaintiff worked in Michigan for 12 years before

moving to Fresno in 2003 because he suffered back and shoulder pain and could no longer work.

Plaintiff reported excessive depressed feelings, lingering fear from nightmares about the war,

agitated mood, startle responses to noise, irritability, social isolation, poor sleep, poor appetite

and body weakness.  Plaintiff was taking antidepressant medication and receiving treatment from

Fresno County Mental Health.  AR 148-149.

On examination, Plaintiff was quiet and withdrawn, but was cooperative and followed

simple instructions in his native language.  Plaintiff demonstrated good long-term memory but

poor short-term memory.  He attempted one-step instructions with encouragement and he

sometimes needed repetition of instructions to keep him focusing on the tasks at hand.  Plaintiff

lost his concentration easily toward the end of the interview.  Despite his sadness and agitated

mood, Plaintiff appeared to be doing his best in responding to what was asked of him.  AR 149-

150.

Dr. Mouanoutoua diagnosed major depressive disorder, severe, post-traumatic stress

disorder, delayed onset, and "acculturation problems, survival from war, and chronic medical

problems."  His GAF was 45.  Dr. Mouanoutoua noted that Plaintiff suffered from many

symptoms, including low stress tolerance, lingering fear from nightmares, body weakness,

depressed feeling and preoccupation with back pain that prevent him from learning new

information and job skills.  Plaintiff cannot follow complex tasks and his impairments impact his

ability to learn English and perform repetitive tasks for an 8 hour day.  AR 151-152.

Plaintiff returned to Fresno County Mental Health on April 21, 2006, and was distraught

over not receiving SSI.  He stated that his attorney told him to go to mental health "as that would

give him more points toward being approved."  Plaintiff was angry and preoccupied with not

having an income.  AR 251.

On April 28, 2006, Plaintiff reported that he has only been getting two hours of sleep a

night.  He also reported that for the past four years, he constantly hears bullets going off in both

ears day and night.  Plaintiff was bored all day because he doesn't like to watch television or

listen to the radio.  He mostly felt angry and stressed over having no income and not being able to work.  AR 250.

In May 2006, Plaintiff reported that he was worse because he had more body pain.  AR 246.  On May 17, 2006, Plaintiff was alert and well oriented to the discussion.  He was responding to questions with appropriate eye contact and effectively engaged himself in group discussion.  AR 244.

Treatment notes from July 2006 indicate that Plaintiff would be taken out of group for multiple no shows.  AR 232-233.

On September 15, 2006, Plaintiff attended group therapy and appeared somewhat active and focused on the tasks, though he was slightly confused.  He was very depressed due to his feelings of hopelessness/helplessness.  Plaintiff indicated that being a soldier in the war caused his mental problems.  AR 218.

On November 17, 2006, Plaintiff attended group therapy and was in a positive mood.  He showed good interaction with staff and peers and appeared to enjoy group interaction.  His continued good coping skills were noted.  AR 207.

On December 4, 2006, Plaintiff saw Dr. Chu and reported that he had run out of Wellbutrin.  He also indicated that he was applying for SSI and asked Dr. Chu to write a letter.  Dr. Chu noted that Plaintiff was stable and diagnosed depression, not otherwise specified, rule out "malingering to get SSI."  AR 205.

On December 14, 2006, Plaintiff saw Greg Hirokawa, Ph.D., for a consultive psychiatric examination.  Plaintiff was cooperative throughout the interview, though his participation effort was questionable because he was not able to answer most questions.  Plaintiff reported that his depression was due to his physical problems and his inability to work.  Plaintiff also reported that he was in a psychiatric hospital in October 2006 for seven days.  Plaintiff told Dr. Hirokawa that he stopped working due to stress and difficulty concentrating.  On examination, Plaintiff's mood was depressed and his affect was restricted.  His intellectual functioning was within the average range.  Plaintiff's recent memory was intact but his past memory appeared selectively limited.

1  Plaintiff was not able to perform a simple three step command and was not able to repeat three

2  numbers consecutively, though his concentration for conversation was adequate.  AR 306-309.

3      Dr. Hirokawa diagnosed depressive disorder not otherwise specified.  Plaintiff's GAF

4  was 62.  He noted that Plaintiff's participation effort was poor or questionable as he was not able

5  to answer questions throughout the interview.  His symptoms of depression were in the mild

6  range.  Dr. Hirokawa believed that Plaintiff could understand, remember and carry out both short

7  instructions and detailed instructions.  His ability to maintain attention and concentration for

8  extended periods was good.  Plaintiff could also accept instructions and respond appropriately to

9  criticism, perform activities within a schedule, maintain regular attendance, sustain an ordinary

10  routine and interact with coworkers.  AR 310-311.

11      On December 21, 2006, Plaintiff underwent an internal medicine evaluation performed by

12  Rustom F. Damania, M.D.  Plaintiff complained of pain in his body, back, leg and hand, as well

13  as daily headaches for the past five years.  On examination, Plaintiff was in no acute distress.  He

14  walked with a normal gait, though very slowly, and did not use an assistive device.  He was alert,

15  cooperative and well-oriented in all spheres.  Range of motion in his neck was normal.  Plaintiff

16  had slight tenderness in his back and range of motion was limited.  Straight leg raising was

17  negative and muscle tone was equal throughout.   Dr. Damania diagnosed multiple arthralgias,

18  with probable mild degenerative joint disease of the lumbosacral spine with no clinical evidence

19  of radiculopathy.  He opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds

20  frequently, stand and walk for six hours and sit for six hours.  Plaintiff did not need an assistive

21  device.  There was no objective reason for postural limitation, though Plaintiff did not make a

22  good effort for range of motion of the lumbar spine.  AR 299-304.

23      In January 2007, a State Agency Physician determined that Plaintiff's physical

24  impairments were not severe.  AR 292, 297.

25      Plaintiff continued his treatment with Fresno County Mental Health through February

26  2007.  AR 195-204.

27

28

6

Treatment notes from Fresno County Mental Health dated April 13, 2007, indicated that Plaintiff participated in the group and enjoyed the interaction.  Plaintiff appeared somewhat tired and withdrawn and he reported that his depression was the same.  AR 153.

On May 4, 2007, Plaintiff was described as depressed but he seemed to enjoy staff encouragement.  AR 154.

On May 7, 2007, Plaintiff saw Dr. Chu.  He reported that Wellbutrin helped him sleep. His mood, insight and judgment were described as normal.  Dr. Chu noted that he was of average intelligence.  AR 175.

On May 9, 2007, State Agency physician J. A. Collado completed a Mental Residual Functional Capacity Assessment form.  Dr. Collado opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions.  Plaintiff retained the ability to understand, remember and carry out simple instructions, maintain socially appropriate behavior, respond appropriately to criticism and respond appropriately to changes in the work setting.  AR 269-271.

Also on May 9, 2007, State Agency Physician Harvey Biala, M.D., completed a Psychiatric Review Technique form.  Dr. Biala opined that Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining social functioning.  Plaintiff was moderately limited in maintaining concentration, persistence and pace.  AR 277-291.  This was affirmed on January 11, 2007.  AR 277.

On May 11, 2007, therapy notes indicated that Plaintiff continued to have symptoms of depression, anxiety and isolation that interfered with his daily social interactions and activities. AR 155.

In June 2007, Plaintiff reported that he continued to be depressed due to health issues.  He isolates himself at home, where he watches television, listens to the radio and goes outside to get fresh air.  Plaintiff also reported that he had difficulty concentrating on tasks due to his poor memory and concentration.  AR 158.

On August 30, 2007, Plaintiff returned to Dr. Chu. He reported that he had not taken his medication for four months because his Medi-Cal was stopped. He could not sleep and was worried about his depression. AR 176.

Plaintiff continued to report depression in August and September 2007. AR 159-169.

In October 2007, Plaintiff appeared to be down and sad and complained of migraine headaches. AR 169.

On October 1, 2007, Plaintiff underwent a psychological evaluation by Thomas W. Shaffer, Ph.D., and Margaret De Molli, psychological trainee. Plaintiff was cooperative and attentive during the interview but was not oriented to time and was not sure of his current age or home address. His affect was blunted and his mood was depressed. Plaintiff's thought content contained severe and persistent thoughts and feelings about suicide. He had an auditory hallucination during the examination and reported visual hallucinations. Plaintiff was impaired in recalling simple information and demonstrated poor judgment and lack of insight. During testing, Plaintiff was attentive and cooperative but his effort diminished with the presence of physical activities. His depression appeared to be the cause of this lack of motivation. Plaintiff was disinterested and applied little effort to the tasks. AR 179-183.

Dr. Shaffer diagnosed Plaintiff with major depressive disorder, severe with psychotic feature and post traumatic stress disorder, chronic, onset delayed. His GAF was 29. Dr. Shaffer opined that Plaintiff's symptoms were impairing his social and occupational functioning. He also completed a Medical Source Statement indicating that Plaintiff's abilities were poor in almost all categories. AR 185-186.

Plaintiff returned to Dr. Chu on November 28, 2007. He reported that he had not taken his medication for seven months because he did not have insurance. He was feeling depressed and could not work, so he was applying for disability benefits. Plaintiff explained that he did not know what he would do if he did not get benefits. Dr. Chu diagnosed depression, not otherwise specified, rule out "malingering to get SSI." He assigned a GAF of 60. AR 177.

In January 2008, Plaintiff reported that he continued to be depressed because of his financial problems. AR 174.

1    ALJ's Findings

2        The ALJ determined that Plaintiff's depressive disorder, not otherwise specified, was a

3    severe impairment.  AR 15.  Despite this, the ALJ determined that Plaintiff retained the residual

4    functional capacity ("RFC") to perform a full range of work at all exertional levels involving

5    simple, repetitive tasks.  AR 17.  With this RFC, the ALJ relied on the Medical-Vocational

6    Guidelines to determined that Plaintiff could perform jobs that exist in significant numbers in the

7    national economy.  AR 21.

8                                    **SCOPE OF REVIEW**

9        Congress has provided a limited scope of judicial review of the Commissioner's decision

10   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

11   the Court must determine whether the decision of the Commissioner is supported by substantial

12   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

13   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

14   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

15   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

16   401.  The record as a whole must be considered, weighing both the evidence that supports and

17   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

18   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

19   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

20   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

21   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

22   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

23   Cir. 1987).

24                                    **REVIEW**

25       In order to qualify for benefits, a claimant must establish that he is unable to engage in

26   substantial gainful activity due to a medically determinable physical or mental impairment which

27   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

28   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

                                          9

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder, not otherwise specified) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 15-21.

Here, Plaintiff argues that the ALJ (1) improperly applied *Chavez v. Bowen*; (2) failed to properly evaluate Plaintiff's mental impairment; (3) erred in finding certain impairments not severe; (4) erred in rejecting the opinions of Dr. Shaffer, Dr. Damania and Dr. Mouanoutoua; (5) failed to call a vocational expert; (6) failed to consider third party evidence; (7) improperly rejected Plaintiff's testimony; and (8) erred at the step three finding.

## DISCUSSION

A.     Application of *Chavez v. Bowen*

Plaintiff argues that the ALJ erred in applying the presumption of continuing non-disability to the period after the March 21, 2005, decision.

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant]

1    continued to be able to work after that date." *Id.*   To overcome this presumption, the claimant

2    must prove "changed circumstances" indicating a greater disability.   *Chavez v. Bowen*, 844 F.3d

3    691, 693 (9th Cir. 1988); Acquiescence Ruling ("Ruling") 97-4(9).   For example, a change in age

4    status after the first determination is a changed circumstance sufficient to rebut the presumption

5    of continuing nondisability.   *Chavez*, 844 F.3d at 693.   Changed circumstances also include an

6    increase in the severity of the claimant's impairment, the alleged existence of a new impairment,

7    or a change in the criteria for determining disability.   Ruling 97-4(9).

8         However, even where the claimant is able to overcome the presumption of disability,

9    certain prior findings are entitled to some res judicata consideration.   Prior determinations of

10   RFC, education and work experience are entitled to res judicata absent new and material

11   evidence on the issue.   *Chavez*, 844 F.2d at 694.   "Adjudicators must adopt such a finding from

12   the final decision on the prior claim in determining whether the claimant is disabled with respect

13   to the unadjudicated period unless there is new and material evidence relating to such a finding

14   or there has been a change in the law, regulations or rulings affecting the finding or the method

15   for arriving at the finding."   Ruling 97-4(9).

16        At the beginning of the decision, ALJ Hoffman explained that a prior hearing decision

17   dated March 21, 2005, found that Plaintiff could carry out simple, repetitive tasks.   The ALJ

18   would apply the presumption of continuing non-disability "unless claimant rebuts the

19   presumption by showing a 'changed circumstance,' such as, for example, an increase in the

20   severity of the claimant's impairment, a change in the claimant's age or the existence of an

21   impairment not previously discussed."   AR 12.   He concluded,

22        Here, the unadjudicated period is from March 22, 2005, to the present.   The claimant has
         not presented any new or material evidence warranting a change in his residual functional
23        capacity.   Therefore, the presumption of continuing non-disability applies and the March
         21, 2005, decision is res judicata as to the period through that date.
24
     AR 12.
25
          Plaintiff contends that certain changed circumstances existed to prevent the ALJ from
26
     applying the presumption of continuing non-disability.   Plaintiff is correct.   For example,
27
     Plaintiff had attained a new age category.   It appears that the ALJ correctly noted that new and
28

                                                    11

1   material evidence *could* warrant a change in the RFC.  This does not mean, however, that the

2   presumption of continuing non-disability automatically applies.  As discussed above, the ALJ

3   must first examine whether changed circumstances exist to prevent a finding of continuing non-

4   disability.  If changed circumstances exist, as they do here, the prior RFC is still entitled to res

5   judicata.  The ALJ must then determine whether new and material evidence exists to warrant a

6   change in the prior RFC.

7          However, the ALJ's failure to cite to Plaintiff's changed circumstances and his slight

8   misapplication of the *Chavez* standard is harmless error.  <u>*Batson v. Comm'r Soc. Sec.*, 359 F.3d</u>

9   <u>1190, 1197 (9th Cir. 2004)</u> (finding an error harmless where it did not negate the validity of the

10  ALJ's ultimate conclusion).  A review of the ALJ's decision reveals that he thoroughly reviewed

11  the medical evidence in finding new severe impairments.  In other words, the decision

12  demonstrates that the ALJ did not strictly apply *Chavez* because he continued on with his review.

13  Even if he correctly found that Plaintiff's changed circumstances rebutted the presumption of

14  continuing non-disability, the ALJ would have had to go forward and review the medical

15  evidence, as he did despite his error.

16         Accordingly, the ALJ's error was harmless.

17  B.     <u>Plaintiff's Mental Impairment</u>

18         Plaintiff next argues that the ALJ's RFC finding that Plaintiff could perform simple,

19  repetitive tasks does not take into account the ALJ's finding that Plaintiff had moderate

20  limitations in concentration, persistence or pace.

21         RFC is an assessment of an individual's ability to do sustained work-related physical and

22  mental activities in a work setting on a regular and continuing basis of eight hours a day, for five

23  days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment considers only

24  functional limitations and restrictions which result from an individual's medically determinable

25  impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an

26  ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

27  evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a

28

1    medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883

2    (9th Cir.2006).

3        Plaintiff's argument ignores a fundamental tenet of the social security evaluation process.

4    A claimant's RFC is the most a claimant *can still do despite* his or her limitations.  20 C.F.R. §

5    404.1545(a)(1).  Indeed, claimants will have limitations, but in a majority of instances, they will

6    retain the ability to perform some tasks.  The RFC determination therefore assumes the existence

7    of limitations.  Here, then, although Plaintiff had a moderate limitation in maintaining

8    concentration, persistence or pace, the ALJ determined that *despite* this, he could perform simple,

9    repetitive tasks.  AR 16-17.

10       The Ninth Circuit has also rejected Plaintiff's argument.  In *Stubbs-Danielson v.*

11   *Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008), the claimant argued that the ALJ's RFC for simple,

12   routine, repetitive work failed to capture a moderate limitation in the ability to perform at a

13   consistent pace.  Even though the vocational expert testified that anything more than a mild

14   limitation with respect to pace would preclude employment, the ALJ rejected this conclusion, in

15   part, because it did not address the claimant's RFC.  In concluding that the ALJ's RFC properly

16   incorporated the limitations regarding attention, concentration and adaptation, the Court

17   explained:

18           The ALJ translated Stubbs-Danielson's condition, including the pace and mental
             limitations, into the only concrete restrictions available to him-Dr. Eather's recommended
19           restriction to "simple tasks."  This does not, as Stubbs-Danielson contends, constitute a
             rejection of Dr. McCollum's opinion.  Dr. Eather's assessment is consistent with Dr.
20           McCollum's 2005 MRFCA, which found Stubbs-Danielson is "not significantly limited"
             in her ability to "carry out very short simple instructions," "maintain attention and
21           concentration for extended periods," and "sustain an ordinary routine without special
             supervision."  As two of our sister circuits have recognized, an ALJ's assessment of a
22           claimant adequately captures restrictions related to concentration, persistence, or pace
             where the assessment is consistent with restrictions identified in the medical testimony.
23           See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir.2001) (where state psychologist
             both identified claimant as having deficiencies of concentration, persistence or pace and
24           pronounced claimant possessed the ability to "sustain sufficient concentration and
             attention to perform at least simple, repetitive, and routine cognitive activity without
25           severe restriction of function," ALJ's hypothetical including ability to perform "simple,
             routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration
26           persistence or pace); Smith v. Halter, 307 F.3d 377, 379 (6th Cir.2001) (where ALJ's
             hypothetical incorporated concrete restrictions identified by examining psychiatrist
27           regarding quotas, complexity, and stress, ALJ did not err in failing to include that
             claimant suffered from deficiencies in concentration, persistence, or pace).

28

1

   The Eighth Circuit's decision in *Howard* is directly on point.  There, the court
2  explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple,
   routine, repetitive work" failed to capture deficiencies in concentration, persistence, or
3  pace.  The court noted the state psychologist's findings which concluded that the
   claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive,
4  routine tasks.  See Howard, 255 F.3d at 582.  The medical evidence by Dr. Eather in the
   present case reflects the same conclusion.

5  539 F.3d at 1174.

6         Based on this Circuit's precedent, the ALJ did not err by finding that Plaintiff was

7  capable of simple, routine tasks despite a moderate limitation in maintaining concentration,

8  persistence or pace.

9         Plaintiff attempts to distinguish *Stubbs-Danielson* by suggesting that it does not address

10 the situation here, where a moderate limitation was found in Paragraph B of the Psychiatric

11 Review Technique form.  This is a distinction without a difference, however.  The Psychiatric

12 Review Technique form is a tool to be used at steps two and three of the sequential evaluation

13 process, not as the basis for an RFC determination.  *Miller v. Astrue*, 2009 WL 4110989, *11

14 (E.D. Cal. 2009).  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation

15 process requires a more detailed assessment by itemizing various functions contained in the

16 broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of

17 the Listing of Impairments, and summarized on the PRTF."  SSR 96-8p.  Therefore, contrary to

18 Plaintiff's belief, there is no requirement that the limitations found in Paragraph B be reflected

19 word for word in the RFC.  *Miller*, at *11.

20        Plaintiff also suggests that the RFC finding was inconsistent with the step two finding

21 that his depression was severe.  A finding of a severe impairment, however, does not necessarily

22 require a corresponding limitation in the RFC.  *See eg., Bray v. Comm'r of Soc. Sec. Admin.*, 554

23 F.3d 1219, 1228-1229 (9th Cir. 2009).

24        The ALJ's treatment of Plaintiff's mental impairment was supported by substantial

25 evidence and was free of legal error.

26

27

28

C.      Analysis of Medical Opinions

Plaintiff argues that the ALJ improperly rejected the opinions of examining physicians Shaffer, Damania and Mouanoutoua.  In formulating Plaintiff's RFC, the ALJ relied on the opinions of Dr. Hirokawa and the State Agency physician.  AR 20.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...."  *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ

1   also relied on laboratory test results, on contrary reports from examining physicians, and on

2   testimony from the claimant that conflicted with her treating physician's opinion. Id. at 751-52.

3       1.   *Dr. Shaffer*

4       Contrary to Plaintiff's assertion, the ALJ gave specific and legitimate reasons for

5   rejecting the opinion of Dr. Shaffer, who opined that Plaintiff's abilities in almost all categories

6   were poor. AR 185-185.  In discussing his opinion, the ALJ noted that it was not supported by

7   the objective medical evidence.  AR 20.  For example, Dr. Shaffer's assigned GAF was

8   *significantly* lower than that found by any other source.  AR 20.  In October 2007, Dr. Shaffer

9   assigned a GAF of 29, yet one month later, Plaintiff's treating psychiatrist, Dr. Chu, assigned a

10   GAF of 60 after a period when Plaintiff had not been taking anti-depressant medications.  AR 20,

11   177.  Also during his November 2007 examination, Dr. Chu found that Plaintiff's mental status

12   examination showed only a depressed and incongruent mood.  Plaintiff was well groomed,

13   cooperative, alert and had normal motor activity, cognition, speech, orientation, thought content

14   and insight and judgment.  AR 20, 177.  Dr. Chu diagnosed "depression, not otherwise specified,

15   R/O malingering to get SSI."  AR 177.

16       The ALJ also noted that despite Dr. Shaffer's finding that Plaintiff had a poor ability to

17   understand, remember and carry out simple instructions, Plaintiff successfully repeated the

18   instructions on taking his two medications.  AR 20, 220.

19       Plaintiff contends that Dr. Shaffer's examination was the "most important" because he

20   was the only examiner to administer a battery of psychological tests.  Opening Brief, at 18.

21   While Dr. Hirokawa did not administer the specific tests given by Dr. Shaffer, he did perform a

22   full mental status examination that examined Plaintiff's attitude and behavior, stream of mental

23   activity/speech, content of thought, mood/affect and intellectual functioning.  AR 308-309.  He

24   also obtained detailed results from which he formed his opinions.  Although Plaintiff's mood

25   appeared depressed and his affect was restricted, Dr. Hirokawa questioned Plaintiff's

26   participation effort because of his inability to answer most questions.  For example, Plaintiff

27   replied "I don't know," when asked why the moon looks larger than the stars, why we refrigerate

28   food, how many months are in a year, how many days are in a week, and what is 4 + 7.  Plaintiff

1  told Dr. Hirokawa that he did not know any presidents of the United States, the capital of

2  California or the governor of California.  AR 308-209.

3      Although Plaintiff does not agree with the outcome of the analysis, the ALJ provided

4  specific and legitimate reasons for rejecting Dr. Shaffer's opinion.

5      2.   *Dr. Damania*

6      There was minimal evidence of a physical impairment in the medical record.  Consultive

7  examiner Dr. Damania opined that Plaintiff could lift and carry 20 pounds occasionally, 10

8  pounds frequently, stand and walk for six hours and sit for six hours.  AR 299-304.  The State

9  Agency physician, on the other hand, determined that Plaintiff's physical impairments were not

10  severe and caused no limitations.  AR 292, 297.

11      In analyzing the opinion evidence, the ALJ set forth Dr. Damania's findings and

12  determined that his conclusions were not supported by the medical evidence or his own findings

13  on examination.  AR 15.  Indeed, the ALJ noted that Plaintiff had not received any medical

14  treatment for his physical complaints since his alleged onset date, did not take any prescribed

15  pain medication and did not undergo any diagnostic testing to corroborate his back complaints.

16  AR 15.

17      As the ALJ also noted, Dr. Damania's own examination was mostly benign.  Plaintiff

18  walked with a normal gait, though very slowly, and did not use an assistive device.  Range of

19  motion in his neck was normal.  Plaintiff had slight tenderness in his back and range of motion

20  was limited, though Dr. Damania noted that Plaintiff did not make a good effort on range of

21  motion testing.  Straight leg raising was negative and muscle tone was equal throughout.  AR

22  299-304.  *See eg., Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995)* (ALJ may reject

23  treating physician's opinion when it is internally inconsistent).

24      Plaintiff attempts to frame the error as the ALJ's acceptance of the State Agency

25  physician over that of Dr. Damania, who admittedly performed the only physical examination.

26  Yet the simple fact that a consultive examination was performed does not, by itself, render the

27  examiner's opinions supreme.  Contrary to Plaintiff's argument, the opinion of a State Agency

28  physician can be substantial evidence.  Although the ALJ cannot rely on the State Agency

opinion alone, it can be substantial evidence where the ALJ points to other evidence.

*Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir. 1989).  Here, not only was Dr. Damania's

opinion unsupported by his own clinical examination, but his limitations were also inconsistent

with a record devoid of *any* treatment for physical impairments.

Plaintiff's contention that the ALJ substituted his medical opinion for that of Dr.

Damania also fails.  While it is true that the ALJ cannot substitute his own lay opinion for that of

a medical professional, *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir.1999), the ALJ did not

do so here.  Rather, the ALJ cited the internal inconsistency in Dr. Damania's opinion, Dr.

Damania's own questioning of Plaintiff's effort and the lack of objective medical evidence in

rejecting his opinion.

The ALJ therefore provided specific and legitimate reasons for rejecting Dr. Damania's

opinions and his analysis was free of legal error.

3.    *Dr. Mouanoutoua*

As he did with Dr. Shaffer's opinions, the ALJ rejected Dr. Mouanoutoua's opinion that

Plaintiff could not sustain work for an eight hour day for various reasons.  AR 20.  Contrary to

Plaintiff's argument, the ALJ did not rely solely on the variations in Plaintiff's GAF scores.  He

also explained that there were numerous instances in the record where Plaintiff's credibility was

called into question.  For example, Dr. Hirokawa believed that Plaintiff's participation effort was

poor or questionable based on his inability to answer most questions during the examination.  AR

310-311.

The ALJ also explained that "Dr. Chu noted possible malingering in his diagnosis."  AR

19.  Plaintiff contends that this is not an accurate description of Dr. Chu's diagnosis, which was

"rule out malingering."  It is certainly reasonable, however, to conclude that if Dr. Chu believed

it necessary to "rule out" malingering, he thought that the possibility of malingering existed.

Finally, the ALJ determined that the record suggested that Plaintiff was "only motivated

in seeking disability."  AR 19.  Indeed, there were numerous instances in the record where

Plaintiff admitted he was better yet insisted on continued treatment so that he could received SSI.

Plaintiff suggests that it is appropriate for a claimant to be motivated in seeking disability "if

Plaintiff *believes he is disabled*." Opening Brief, at 24 (emphasis added). The record shows, however, that Plaintiff asked to remain in the Mental Health treatment despite his admission that he was better. In May 2005, Plaintiff agreed that he was stable but worried how discharge would affect this SSI. AR 259. In August 2005, after Plaintiff had gone on a two week vacation with his girlfriend, he acknowledged that he had met his goal of treatment but requested that his case be left open because of the pending SSI application. AR 252. It is surprising that Plaintiff attempts to characterize this as "appropriate."

The ALJ's treatment of the medical opinion evidence was supported by substantial evidence and free of legal error.

D.     Use of Vocational Expert

Plaintiff argues that the ALJ should have used a Vocational Expert ("VE") at step five because of Plaintiff's inability to communicate in English.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

The ALJ determined that Plaintiff could perform work at all exertional levels involving simple, repetitive tasks. AR 17. He also concluded that Plaintiff was illiterate and unable to communicate in English. AR 21. The ALJ acknowledged that these non-exertional limitations compromised his ability to perform work at all exertional levels, but concluded that "these limitations have little or no effect on the occupational base of unskilled work at all exertional

levels." The ALJ therefore relied on Medical-Vocational Guideline 204.00 to find that Plaintiff was not disabled. AR 21.

It was within the ALJ's province to make this determination. *Desrosiers*, 846 F.2d at 577. Such a conclusion is certainly logical given that Plaintiff could perform the full range of unskilled work at every exertional level. In fact, the Grids specifically address such non-exertional limitations. The ability to perform simple, repetitive tasks is consistent with unskilled work. SSR 85-15. An individual with solely non-exertional limitations who is capable of performing the *full range* of unskilled work is capable of performing jobs that exist in significant numbers pursuant to Rule 203.00(a).

Similarly, Plaintiff's inability to communicate in English does not significantly limit the available jobs where a claimant can perform unskilled work at every exertional level. "[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or the ability to communicate in English has the least significance." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(i).

The ALJ's reliance on the Grids at Step five was therefore supported by substantial evidence and free of legal error.

E.     Third Party Evidence

Plaintiff asserts that the ALJ erred in rejecting the unsigned Third Party Function Report from Yee Vang, Plaintiff's friend.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006)). Such testimony is competent evidence and "cannot be disregarded without comment." *Id.* (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Id.* Further, the reasons "germane to each witness" must be specific. *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

The ALJ, however, need not discuss all evidence presented.  See *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984).  Rather, he must explain why "significant probative evidence has been rejected."  *Id.* (*citing Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)).  Lay witness testimony which is neither significant nor probative may be properly ignored.  *See id.* at 1395.  Similarly, third party testimony which is unsupported or controverted by medical evidence may be rejected.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005).

In his decision, the ALJ set forth the testimony of Mr. Vang, who indicated that Plaintiff's impairment affected almost all aspects of his life.  Specifically, Mr. Vang opined that Plaintiff's impairments affected his ability to lift, squat, walk, talk, hear, concentrate, remember, complete tasks, understand, follow instructions, use his hands and get along with others.  When asked to explain how these activities were affected, Mr. Vang indicated that Plaintiff could walk one block, or 20 to 30 yards, though he also indicated that didn't know how long Plaintiff could walk before needing to rest.  Mr. Vang also opined that Plaintiff could pay attention for two minutes and could not follow any spoken instructions.  AR 104-111.

In rejecting his opinions, the ALJ explained that except for the walking limitation, Mr. Vang failed to quantify how the above abilities were impacted.  AR 20.  Indeed, the report requested such information but Mr. Vang left much of that portion of the report blank.  AR 109-110.  The ALJ therefore provided a specific reason for rejecting Mr. Vang's report.

Plaintiff suggests that the ALJ had a duty to recontact Mr. Vang "for clarification of his opinions."  Opening Brief, at 29.  First, it is the duty of the claimant to prove to the ALJ that he is disabled.  20 C.F.R. § 404.1512(a).  Second, the ALJ's duty to develop the record is triggered only where the evidence is ambiguous or the record is inadequate to allow for proper evaluation.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).  Based on the discussion of the evidence throughout this order, the evidence is far from ambiguous or inadequate.

The ALJ's treatment of Mr. Vang's testimony was supported by substantial evidence and free of legal error.

F.     Plaintiff's Allegations

Plaintiff argues that the ALJ set forth improper reasons for rejecting his testimony.

In _Orn v. Astrue_, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other
> non-exertional impairment.  _See Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir.1989).
> However, to discredit a claimant's testimony when a medical impairment has been
> established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  _Morgan_,
> 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive."  _Id._  Where, as here, the ALJ did not find
> "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
> claimant's testimony must be clear and convincing."  _Id._
>
> Social Security Administration rulings specify the proper bases for rejection of a
> claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
> supported by reasons that do not comport with the agency's rules.  _See_ 67 Fed.Reg. at
> 57860 ("Although Social Security Rulings do not have the same force and effect as the
> statute or regulations, they are binding on all components of the Social Security
> Administration, ... and are to be relied upon as precedents in adjudicating cases."); _see_
> _Daniels v. Apfel,_ 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
> step three of the disability determination was contrary to agency regulations and rulings
> and therefore warranted remand).  Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or inadequately
> explained, failure to seek treatment or follow a prescribed course of treatment."  _Fair_,
> 885 F.2d at 603; _see also Thomas_, 278 F.3d at 958-59.

The ALJ first cited instances in the record where Plaintiff's credibility was questioned.

AR 19.  As described above, Dr. Chu repeatedly diagnosed Plaintiff with depression, rule out

malingering.  Dr. Hirokawa noted that Plaintiff exhibited poor and questionable effort during the

mental status examination.  AR 177, 205, 266, 310-311.  To the extent that Plaintiff repeats

arguments, the Court has addressed them elsewhere in this opinion.  In any event, the ALJ's

reliance on Dr. Chu's notation of possible malingering and Dr. Hirokawa's finding of poor effort

was proper.  _See Benton ex rel. Benton v. Barnhart,_ 331 F.3d 1030, 1040 (9th Cir. 2003)

(evidence of malingering can be used in rejecting a claimant's statements); _Thomas_, 278 F.3d at

959 (ALJ may consider claimant's failure to give maximum effort during examinations).

The ALJ next set forth the evidence that suggested that Plaintiff was only motived in

seeking disability.  AR 19.  As discussed above, the instances of Plaintiff's questionable

motivation occurred when he _admitted_ that he was either stable or had met the goals of treatment.

The ALJ may use "ordinary techniques" in addressing credibility, <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." <u>Macri v. Chater</u>, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ also explained that Plaintiff was not always compliant with his mental health treatment and missed and/or cancelled several appointments to the point where he was almost discharged due to multiple no shows. AR 19. <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001) (claimant's failure to seek or follow prescribed treatment is a proper basis for finding her allegations of disabling pain and other symptoms not credible).

The ALJ then moved on to inconsistencies in the medical evidence. For example, although Dr. Shaffer found that Plaintiff was extremely limited in his ability to retain information, both short term and long term, the record showed that Plaintiff was able to understand instructions on taking his medications. AR 20. In November 2007, Plaintiff's mental status examination was essentially normal except for depressed and incongruent mood. There were also large variations in Plaintiff's GAF score, which ranged anywhere from 29 to 65. SSR 96-7p (objective medical evidence may be used in the credibility determination).

Plaintiff makes much of the ALJ's citation to the varying GAF scores, contending that it "may" address the waxing and waning of his impairments. Opening Brief, at 30. This argument would be more persuasive had the variations not ranged from 29, which reflects a serious impairment in communication and judgment or an inability to function in almost all areas, to 65, which reflects some mild symptoms with an ability to function well. *Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th Ed. 1994). Moreover, contrary to Plaintiff's contention, the Commissioner is not relying on Plaintiff's GAF scores to determine Plaintiff's level of functioning. Rather, the ALJ is using it to illustrate the questionable variations in assessing Plaintiff's credibility.

Finally, the ALJ set forth discrepancies in Plaintiff's testimony and statements as to why he stopped working. For example, Plaintiff told Dr. Hirokawa that he stopped working because of stress and difficulty concentrating. He told Dr. Shaffer and Dr. Mouanoutoua, however, that he stopped working because of back and shoulder pain. AR 20. Plaintiff himself testified that he

stopped working because of back and leg pain.  AR 328.  Again, the ALJ is permitted to use ordinary techniques in assessing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In opposing the ALJ's statements on Plaintiff's reasons for stopping work, Plaintiff is simply splitting hairs.  He argues that he did not tell Dr. Shaffer or Dr. Mouanoutoua why he stopped working, but rather why he moved from Michigan to Fresno.  As Plaintiff characterizes it, Dr. Mouanoutoua noted that Plaintiff "moved to Fresno, California because he reportedly suffered more back pain and shoulder pain and he could no longer work."  Dr. Shaffer noted that "he reportedly moved to Fresno due to reoccurring back and shoulder pain, explaining the constant cold weather in Michigan increased his pain and his inability to work."  Opening Brief, at 31.  Although the statements do not literally say, "Plaintiff stopped working because...," they certainly suggest that Plaintiff reported that both his move and his inability to work were due to his back and shoulder pain.

The ALJ's credibility analysis was supported by substantial evidence and was free of legal error.

G.     Step Three Finding

Finally, Plaintiff argues that the ALJ's step three finding is not supported by substantial evidence because his combined impairments are at least medically equivalent to a listed impairment.  Specifically, Plaintiff contends that his impairments equal Listing 12.04 (Affective Disorders) and 12.06 (Anxiety Disorders).

The listings of impairments describe impairments "that are considered severe enough to prevent an adult from doing any gainful activity."  20 C.F.R. § 416.925(a).  Most of these impairments are permanent or expected to result in death.  *Id.*  For all other impairments, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.  *Id.*  If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.  20 C.F.R. § 416.920(d).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing.  *Sullivan v. Zebley*, 493 U.S.

1  521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how

2  severely, does not qualify." *Id.*  To "equal" a listed impairment, a claimant must establish

3  symptoms, signs and laboratory findings "at least equal in severity and duration" to the

4  characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.

5  1999); 20 C.F.R. §§ 404.1526(a), 416.926(a).  Under the law of this circuit, "[i]t is unnecessary

6  to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every

7  different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th

8  Cir.1990).

9       In his decision, the ALJ examined Listing 12.04.  He determined that Plaintiff's

10  impairment did not meet at least two of the Paragraph B criteria and did not establish the

11  presence of the Paragraph C criteria.  AR 16-17.  The ALJ did not specifically analyze Listing

12  12.06, though much of the analysis would be similar.

13       Plaintiff's argument is based on his belief that in combination, his post-traumatic stress

14  disorder, depression and physical impairments satisfied both Listings.  He also points to the

15  opinions of Dr. Shaffer and Dr. Mouanoutoua to support his contention that he has marked

16  difficulties in at least two of the Paragraph B criteria of both Listings.

17       The Court has already determined that the ALJ correctly rejected the opinions of Dr.

18  Shaffer and Dr. Mouanoutoua and Plaintiff's reliance on those opinions therefore fails.

19       Plaintiff does not to point to any other specific evidence.  Although he suggests that the

20  ALJ failed to consider the combination of his impairments, he does not point to any objective

21  evidence that shows, for example, that a physical impairment affects his mental state.

22       Plaintiff's argument is without merit and must be denied.

23                                 **CONCLUSION**

24       Based on the foregoing, the Court finds that the ALJ's decision is supported by

25  substantial evidence in the record as a whole and is based on proper legal standards.

26  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

27

28

Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Cha Yang.


    IT IS SO ORDERED.

**Dated:**   **September 22, 2010**             **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE